**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| MARK E. CARRIER and RUTH CARRIER, | |
|                Plaintiffs, | Civil No. 12-104 RMB/JS |
|     v. | [Docket No. 24] |
| | **OPINION** |
| BANK OF AMERICA, N.A., et al., | |
|                Defendants. | |
| LUIS NIEVES, | |
|                Plaintiff, | |
|     v. | Civil No. 12-7702 RMB/JS |
| | [Docket No. 5] |
| BANK OF AMERICA, N.A., et al., | |
|                Defendants. | |
| ALLEN DIKKER, | |
|                Plaintiffs, | |
|     v. | Civil No. 12-7755 RMB/JS |
| | [Docket No. 6] |
| BANK OF AMERICA, N.A., et al., | |
|                Defendants. | |

MICHAEL CARELLI,

                Plaintiff,

      v.

BANK OF AMERICA, N.A., et al.,

                Defendants.

Civil No. 12-7701 RMB/JS

[Docket No. 5]

---

MARY DEBONIS,

                Plaintiff,

      v.

BANK OF AMERICA, N.A., et al.,

                Defendants.

Civil No. 12-7945 RMB/JS

[Docket No. 5]

---

ARMANDO GARCIA,

                Plaintiff,

      v.

BANK OF AMERICA, N.A., et al.,

                Defendants.

Civil No. 12-7946 RMB/JS

[Docket No. 6]

```
KRZYSZTOF KOWALCZYK

                    Plaintiff,          Civil No. 12-7947 RMB/JS

        v.                              [Docket No. 5]


BANK OF AMERICA, N.A., et al.,

                    Defendants.
```
```
DILCIA MENDEZ,

                    Plaintiff,
                                        Civil No. 12-7949 RMB/JS
        v.
                                        [Docket No. 5]

BANK OF AMERICA, N.A., et al.,

                    Defendants.
```
```
JUNG LIM,

                    Plaintiff,
                                        Civil No. 12-7948 RMB/JS
        v.
                                        [Docket No. 5]

BANK OF AMERICA, N.A., et al.,

                    Defendants.
```

APPEARANCES:

Michael D. Shaffer, Esq.
SHAFFER & GAIER, LLC
1628 JFK Blvd
Suite 400
Philadelphia, PA 19103
Attorney for Plaintiffs

Diane A. Bettino, Esq.
Kellie A. Lavery, Esq.
Mark S. Melodia, Esq.
REED SMITH, LLP
136 Main Street
Suite 250
Princeton, NJ 08543
Attorneys for Defendants

**BUMB**, United States District Judge:

This matter comes before the Court upon several motions by Defendant Bank of America, N.A. and its predecessor, Countrywide Home Loans Servicing, L.P. ("Countrywide"), (hereinafter the "Defendant"), to dismiss Plaintiffs' Complaints in the above-captioned nine related cases.[1] For the reasons set forth below, these motions shall be granted.

## I.  **Background**[2]

Because all of the Plaintiffs' Complaints[3] in the above-captioned matters are substantially identical, the Court will

---

[1] Plaintiffs originally filed these nine actions as one consolidated case.  Following oral argument on the Defendant's first motion to dismiss in 12-104 [Docket No. 7], this Court ordered that the matters should be severed in the hopes that the Plaintiffs would put forth specific allegations as to each Plaintiff.

[2] This Court will accept the Plaintiffs' well-pled allegations as true for purposes of this motion to dismiss.  See Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

[3] In Carrier, 12-104, the Plaintiffs have filed an Amended

set forth the facts similar to each Complaint.[4]

The Plaintiffs in all nine matters are citizens of New Jersey who allege they were "victims of Countrywide's negative amortization loan scheme." Pls.'s Br. at 2. To effectuate this alleged scheme, Plaintiffs aver that "Countrywide employees marketed, sold or negotiated the terms of the mortgage loans through its origination channels either directly to consumers or indirectly by working with mortgage brokers or mortgage bankers," and that those brokers "were acting as agents of Countrywide . . . as Countrywide was the party that was offering, approving and funding the loan product to the Homeowners." Amended Complaint ("Amend. Compl.") at ¶¶ 10-11.

_____

Complaint. For ease of reference this Court will refer generally to the allegations contained in that Amended Complaint, as the parties have treated that matter as the lead case for purposes of these motions and the motion papers in all matters are nearly identical. See Pls.' Reply Br. at 2 n. 1 ("The citations are to the Amended Complaint in Carrier but the allegations are the same in all of the eight other causes of action"). Arguments specific to only certain Plaintiffs are addressed infra at 29.

[4] The similarity of these allegations is bolstered by the fact that the Plaintiffs have filed only one opposition brief, uniform in each of the above-captioned matters. See No. 12-104, Pls.' Br. at p. 2: "Since the arguments are virtually identical in all of the cases, Plaintiff will file one response and incorporate by reference all of the arguments set forth in this Memorandum of Law in the other right matters."

Plaintiffs further allege that the Defendant maintains "sophisticated electronic databases" by and through which corporate management obtained financial information needed to solicit loan products that were "predatory, misleading and fraudulent." Pls.' Br. at 3, citing Amend. Compl. ¶¶ 12-32. Defendant is alleged to have implemented this deceptive scheme by: "(a) advertising that it was the nation's largest lender and could be trusted by consumers; (b) encouraging borrowers to refinance who obtained purchase money financing with complicated mortgage instruments like hybrid adjustable rate mortgage or payment option adjustable rate mortgages that were difficult for consumers to understand; (c) marketing these complex loan products to consumers by emphasizing the very low initial "teaser" or "fixed" rates while obfuscating or misrepresenting the latter steep monthly payments and interest rate increases or risks of negative amortization; and (d) routinely soliciting borrowers to refinance only a few months after Countrywide or other loan brokers with whom it had business partnerships and sold them loans, commonly called loan flipping." Amend. Compl. at ¶ 18.

Plaintiffs further allege that "Countrywide directly and indirectly motivated its branch managers, loan officers and

brokers to market loans that would earn the highest premiums on

the secondary markets without regard to borrowers' ability to

repay." Id. at ¶ 31. In addition, Plaintiffs allege that

Countrywide "used the 'stated income' method of underwriting,

meaning that rather than document the borrowers' income with tax

returns, paystubs, etc., they would simply 'state' the income,

often using a significantly higher income than the borrower

actually had." Id. at ¶ 10.

Several paragraphs in the Amended Complaint describe the

Countrywide payment option adjustable rate mortgage – i.e., "pay

option ARM," which Plaintiffs allege was "financially risky,"

"difficult for borrowers to understand," and "resulted in

negative amortization." Pls.' Br. at 3; Amend. Compl. at ¶ 34.

Countrywide enticed consumers to the pay option ARM by offering

"a very low 'teaser' rate – often as low as 1% –– for an

introductory period . . . . At the end of the introductory

period, the interest rate increases dramatically." Amend.

Compl. at ¶ 34.

Plaintiffs also allege that the loan documents provided by

Countrywide were deceptive "as the only initial monthly payment

amount that appeared anywhere in [the] loan documents was the

minimum payment amount" and "[e]ven the Adjustable Rate Rider to

the Mortgage and the actual Note . . . listed the minimum
payment and the minimum payment rate, rather than the rate that
it would adjust to in one to three months." Id. at ¶¶ 44 & 46.
Moreover, Plaintiffs allege that Countrywide's closing documents
violate the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et
seq., because the Plaintiffs "could not accurately calculate an
APR because certain adjustments, balance increases and interest-
on-interest calculations were not accounted for in the APR as
presented." Id. at ¶ 48.

The brokers[5] in Plaintiffs' transactions are alleged to have
been Countrywide's "business partners" who "misrepresented or
obfuscated the true terms of the pay option ARMs." Id. at ¶ 49.
The brokers mentioned in Plaintiffs' complaints are alleged to
have partnered with Countrywide "to perpetrate the fraud" and
were given marketing and advertising materials "that pushed the
Defendant Broker[s] to sell the negative amortization loans to
Plaintiff." Id. at ¶¶ 61 & 63. In addition, the brokers are
alleged to have - at the specific instruction of Countrywide -
a) informed the Plaintiffs that the negative amortization loan
was a sound financial product with little to no risk to the
borrower; b) instructed the borrowers that this was the best

---

[5] It does not appear that any brokers have been served by
the Plaintiffs.

loan that they qualified for when in fact that was not true, and c) instructed the borrowers to simply pay the lowest amount possible and then Countrywide would simply refinance the mortgage at the appropriate time. Id. at ¶ 76.

It is further alleged that both Countrywide and the brokers "knew or should have known that all of the foregoing statements were false and fraudulent and that the Plainitff[s] would rely upon these statements when they were made." Id. at ¶ 77. Finally, Plaintiffs aver that the brokers "at the specific direction of Countrywide inflated the income without the [Plaintiffs'] knowledge thereby allowing borrowers to qualify for a loan that Defendants knew . . . was economically unfeasible to [P]laintiffs." Id. at ¶ 79.

Based on the above, Plaintiffs have asserted claims for fraud, fraud in the inducement, under the New Jersey Consumer Fraud Act, promissory estoppel, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, New Jersey and Federal Racketeer Influenced and Corrupt Organizations Act claims, civil conspiracy, and for declaratory relief. Defendant has moved to dismiss Plaintiffs' claims in all nine above-captioned matters. For the reasons discussed below, Defendant's motion will be granted.

## II. Standard

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "[A]n unadorned, the-defendant-unlawfully harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well

as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)(citing Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

## III. Analysis

The Defendant argues that the Plaintiffs' Complaints lack the specificity needed to sustain their fraud-based claims – i.e., "Plaintiffs fail to identify any false statements by Defendant" and, as such, Plaintiffs' fraud claims must be dismissed. Def.'s Br. at 2. Defendant further argues that "[a]ll of Plaintiffs' subsequent claims are derivative of their fraud claims because they each depend upon fraudulent misrepresentations as an essential element." Id. Finally, Defendants argue that Plaintiffs' New Jersey and Federal RICO claims are barred by the applicable four year statutes of

limitation and must be dismissed.  This Court will address each

of the Plaintiffs' claims in turn.[6]


a) Fraud, Fraud in the Inducement & New Jersey Consumer
   Fraud Act ("NJCFA")

In order to satisfy the heightened pleading standard

expressed under Federal Rule of Civil Procedure Rule 9(b), the

plaintiff must plead with particularity the circumstances

constituting a fraud.  Fed. R. Civ. P. 9(b).  This can be

accomplished by pleading "the date, time, and place" of the

fraud or otherwise injecting "precision or some measure of

substantiation into the allegations."  Slimm v. Bank of Am.

Corp., No. 12-5846, 2013 U.S. Dist. LEXIS 62849, at * 46-47

(D.N.J. May 2, 2013)(quoting Frederico v. Home Depot, 507 F. 3d

188, 200 (3d Cir. 2007)).  A plaintiff alleging fraud must state

the circumstances of the fraud with "sufficient particularity to

place the defendant on notice of the precise misconduct with

which he is charged."  Lum v. Bank of America, 361 F.3d 217,

223-24 (3d Cir. 2004).  In other words, the Rule "requires

plaintiffs to plead the who, what, when, where, and how: the

_____

[6] Per page 9, footnote 3 of Plaintiffs' opposition papers,
Plaintiffs have withdrawn their promissory estoppel claims
without prejudice; the Court need not address the merits of the
Defendant's arguments regarding the same.

first paragraph of any newspaper story." <u>In re Advanta Corp.</u>
<u>Sec. Litig.</u>, 180 F.3d 535, 534 (3d Cir. 1999).  This standard
applies to all of Plaintiffs' claims sounding in fraud – i.e.,
fraud, fraud in the inducement, and their claims under the
NJCFA.

To allege fraud in New Jersey, a plaintiff must plead "(1)
a material misrepresentation of a presently existing or past
fact; (2) knowledge or belief by the defendant of its falsity;
(3) an intention that the other person rely on it; (4)
reasonable reliance thereon by the other person; and (5)
resulting damages." <u>Banco Popular No. Am. v. Gandi</u>, 184 N.J.
161, 876 A.2d 253, 260 (N.J. 2005).  Similarly, a claim for
fraud in the inducement involves "(1) a material
misrepresentation of a presently existing or past fact, (2) made
with knowledge of its falsity and (3) with the intention that
the other party rely thereon, (4) resulting in reliance by that
party to his detriment."  <u>Am. Fin. Res., Inc. v. Countrywide</u>
<u>Home Loans Servicing</u>, No. 12-7141, 2013 U.S. Dist. LEXIS 180132,
at * 29 (D.N.J. Dec. 23, 2013).

Like common law claims for fraud and fraud in the
inducement, claims under the NJCFA are subject to the heightened
pleading requirements of Rule 9(b), discussed above.  <u>FDIC v.</u>

Bathgate, 27 F.3d 850, 876 (3d Cir. 1994). In order to state a NJCFA claim, a plaintiff must show three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. See Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC, 945 F. Supp. 2d 543, 558 (D.N.J. 2013)(citing International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 929 A. 2d 1076 (2007)).

Defendant argues that all of Plaintiffs' claims sounding in fraud fail because the Plaintiffs have not specifically alleged any specific material misrepresentation made by Defendant with the level of specificity required under Rule 9(b) – i.e., the "who, what, where and when" of the alleged material misrepresentation, which is a key element to both the fraud and fraud in the inducement claims. Defendant also argues that the Plaintiffs' conclusory allegations as to an agency relationship between Countrywide and the brokers are insufficient and, therefore, Plaintiffs have failed to attribute any alleged misrepresentations or other unlawful conduct to the Defendant as required under all three fraud-based claims.

In response, Plaintiffs assert that the following allegations contain the requisite specificity to survive the instant motion:

- The Defendant Broker, at the specific instruction of Countrywide, informed the Plaintiffs that the Negative Amortization loan was a sound financial product with little to no risk to the borrower. Further, at the direction of Countrywide, the Defendant Broker instructed the borrowers that this was the best loan that they qualified for when in fact that was not true. Moreover, the Defendant broker, at the direction of Countrywide instructed the borrowers to simply pay the lowest amount possible and then Countryside would simply refinance the mortgage at the appropriate time.

- Defendant Broker and Countrywide knew or should have known that all of the foregoing statements were false and fraudulent and the Plaintiff would rely upon these statements when they were made.

- Countrywide paid the Broker monies to originate this loan.

- The Broker at the specific direction of Countywide inflated the income without the Borrowers knowledge thereby allowing borrowers to qualify for a loan that the Defendants knew that was economically unfeasible to the Plaintiffs.

Pls.' Br. at 14.

This Court agrees with Defendant that the Plaintiffs' allegations lack the "the date, time, and place" of the fraud or other requisite "precision or some measure of substantiation" required to survive the instant motion. Slimm v. Bank of Am. Corp., No. 12-5846, 2013 U.S. Dist. LEXIS 62849, at * 46-47 (D.N.J. May 2, 2013)(quoting Frederico v. Home Depot, 507 F. 3d

188, 200 (3d Cir. 2007)).  A review of the Amended Complaint reveals that Plaintiffs have not provided specifics as to who made these alleged statements other than the generic "Defendant Broker," or when such statements were purportedly made.

Moreover, the Plaintiffs have failed to plead adequate facts sufficient to tie any alleged misrepresentations by the "Defendant Brokers" to the Defendant via agency.  The sum and substance of Plaintiffs' allegations with respect to alleged agency is that the brokers "were acting as agents of Countrywide," that "Countrywide partnered with the Defendant Broker[s] to perpetrate the fraud," and the brokers made misrepresentations at the "specific instruction" of Defendant. See Amend. Compl. at ¶ ¶ 11, 61 & 76.  A plaintiff may not conclusively assert that a party was another party's agent without sufficient factual allegations.  See TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC, 2013 U.S. Dist. LEXIS 41206, *10 (D.N.J. 2013)("A plaintiff may not simply assert in conclusory terms that a party is another party's agent for purposes of vicarious liability."); Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004)(sufficient pleading of agency required facts about control and consent to support

allegations of an agency relationship between subsidiary and parent corporations).

Because Plaintiffs have pointed to no evidence of an express agency relationship,[7] Plaintiffs must show the existence of an "apparent agency" relationship to impute the alleged false statements made by the brokers to the Defendant. See Huelas v. Wells Fargo, No. 11-7250, 2012 U.S. Dist. LEXIS 110578, at *2-3 (D.N.J. Aug. 7, 2012)(discussing agency relationship in mortgage transaction context). To demonstrate the existence of apparent agency, Plaintiffs must establish that: "(1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances." Id. at *12 (citing Mayflower Transit, LLC v. Prince, 314 F. Supp. 2d 362, 374 (D.N.J. 2004)).

Again, instead of presenting factual allegations in support of an agency relationship, Plaintiffs instead recite legal conclusions that the brokers "were acting as agents of

---

[7] "Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.'" Hollingsworth v. Perry, 133 S. Ct. 2652, 2666 (2013)(quoting 1 Restatement (Third) of Agency §1.01, Comment f (2005).

Countrywide," which is insufficient under the dictates of Iqbal. See Garczynski v. Countrywide Home Loans, 656 F. Supp. 2d 505, 512 (E.D. Pa. 2009)(finding that plaintiffs' conclusory allegation that a broker "acted as an agent for Defendant Countrywide" was "insufficient to support a conclusion that [broker] was an agent of Countrywide and that Countrywide may be liable for her conduct."); see also TBI Unlimited, LLC, 2013 U.S. Dist. LEXIS 41206, *12-14 (D.N.J. 2013)("the Complaint makes no showing that apparent authority existed as Plaintiff alleges no facts to show that the actions of [Defendant] misled the public into believing that Clear Cut was its agent").

Finally, Plaintiffs seek to support their fraud claims on the grounds that the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., disclosure statements presented to Plaintiffs were allegedly not consistent with the mortgage notes and that those TILA disclosure statements are "false and misleading." Plaintiffs cannot assert a cause of action under TILA because, as they admit, the statute of limitations has expired. Pls.' Br. at 15, n. 4. That the Plaintiffs' claims sounding in fraud are sustained by alleged TILA violations is, again, only supported by Plaintiffs' vague conclusory allegations – e.g.,

"Plaintiffs' Note and TILA statement are misleading, fraudulent and even contradict one another." Amend. Compl. at ¶ 70.

To use TILA as a way to sustain a claim here (either via fraud, fraud in the inducement or under the New Jersey Fraud Claims Act, as discussed further below) requires Plaintiffs to be able to plead with the requisite particularity and to satisfy all of the elements of those claims. For reasons already discussed above, Plaintiffs have failed to provide any factual support with respect to how the TILA disclosures are incorrect or how the individual Plaintiffs were misled by the TILA disclosure statements other than vague assertions.[8]

As such, all of Plaintiffs' claims sounding in fraud fail to meet the dictates of Rule 9(b). Moreover, Plaintiff's NJCFA claim is further eviscerated by the very terms of the Amended Complaint: Plaintiffs state that the suffered an "unascertainable loss" by virtue of the alleged NJCFA violation, (Amend. Compl. at ¶99), but to sustain a NJCFA claim expressly requires that Plaintiffs suffer an "ascertainable" loss. See

---

[8] This Court need not address Plaintiffs' other assertions regarding alleged TILA violations (e.g., that the documents do not recognize the homeowner's option to make interest only payments or that the TILA Disclosure Statement does not recalibrate the loan to reflect the true payments being made) because such assertions constitute claims properly brought under TILA and, as admitted by Plaintiffs, such claims are time-barred.

<u>Francis E. Parker Mem. Home, Inc.</u>, 945 F. Supp. 2d 543, 558 (D.N.J. 2013).  Therefore, Plaintiffs' fraud, fraud in the inducement, and NJCFA claims shall be dismissed.

b) <u>Breach of Good Faith and Fair Dealing</u>

All contracts in New Jersey contain an implied covenant of good faith and fair dealing.  <u>Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.</u>, 228 F.3d 275, 288 (3d Cir. 2000).  The covenant operates to ensure that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 690 A.2d 575, 587, 148 N.J. 396 (1997).  "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation."  <u>Black Horse Lane Assoc., L.P.</u>, 228 F.3d at 288.  In addition "[t]he Supreme Court of New Jersey has clearly held that bad motive is 'essential' to a claim for breach of the implied covenant of good faith and fair dealing."  <u>Vasaturo Bros. v. Alimenta Trading-USA</u>, No. 09-2049, 2011 U.S. Dist. LEXIS 80026, at * 13-14 (D.N.J. July 22, 2011).

Plaintiffs' only averments with respect to this Count are to incorporate prior allegations by reference and to conclusively allege that "Defendant['s] actions as stated herein were in violation of that implied covenant of good faith and fair dealing." Amend. Compl. at ¶ 106. Plaintiffs' opposition brief to the instant motion does little to clarify the basis of their claim other than to say: "Defendants knew these loans were 'toxic' and doomed for default, but purposely mislead [sic] Plaintiffs into believing that their loan was affordable when, in fact, it was not." Pls.' Br. at 18.

Beyond conclusory assertions that the loans were "doomed and toxic," the Plaintiffs have not provided any factual grounds to sustain this claim and Defendant's motion to dismiss will be granted. See Iqbal, 556 U.S. at 679 ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Moreover, this Court agrees with the Defendant that there are no allegations that the Plaintiffs did not receive the loan funds due under the terms of the contract and, therefore, Plaintiffs have not properly alleged that

Defendant engaged in conduct either "destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder, Inc., 690 A.2d at 587.

### c) Negligent Misrepresentation

In order to state a negligent misrepresentation claim, a plaintiff must allege that: (1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiff's damages. Prudential Ins. Co. of Am. v. Goldman, Sachs & Co., 12-6590, 2013 U.S. Dist. LEXIS 50788, 2013 WL 1431680, at *27-28 (D.N.J. Apr. 9, 2013)(citing McCall v. Metro. Life Ins. Co., 956 F. Supp. 1172, 1186 (D.N.J. 1996)).

The entirety of Plaintiffs' argument in support of a negligent misrepresentation claim is:

> Plaintiffs have stated that the loan documents were misleading and fraudulent in their nature, and that the deception was intentional. At the very least, Plaintiffs have alleged that the Defendant[s] knew or should have known that the loans were deceptive and misleading, and therefore, Plaintiffs have set forth a claim for negligent misrepresentation.

Pls.' Br. at 19.  Again, Plaintiffs provide only insufficient

legal conclusions in support of this claim.  Also, for reasons

discussed at length above Plaintiffs have not attributed false

and misleading statements to the Defendant via agency and,

therefore, the negligent misrepresentation claim must be

dismissed.


     d) New Jersey & Federal RICO

     "The statute of limitations in New Jersey for civil

liability claims under New Jersey's RICO statute is four years

after the commission of the offense."  Lutzky v. Deutsche Bank

Nat'l Trust Co., No. 09-3886, 2009 U.S. Dist. LEXIS 100062, at *

10 (D.N.J. Oct. 27, 2009).  Like New Jersey, Federal RICO law is

also governed by a four year statute of limitations.  See Forbes

v. Eagleson, 228 F.3d 471, 483 (3d Cir. 2000)(citing Agency

Holding Corp. v. Malley-Duff Assocs., 483 U.S. 143, 156 (1987)).

In determining when a RICO claim accrues, courts in the Third

Circuit apply the injury discovery rule "whereby a RICO claim

accrues when plaintiffs knew or should have known of their

injury."  Mathews v. Kidder Peabody & Co., 260 F.3d 239, 252 (3d

Cir. 2001)(emphasis added).  The Court must first perform "an

objective inquiry to determine when plaintiffs should have known

of the basis of their claims. . . ." <u>Cetel v. Kirwan Financial</u> <u>Group, Inc.</u>, 460 F. 3d 494, 507 (3d Cir. 2006).

In cases alleging analogous facts, courts have held, where all of a plaintiffs' clams stemmed from the terms of and execution of their mortgage loan, that "Plaintiffs could have easily discovered the improper conduct at the time of the execution of the mortgage simply by reviewing the documents relating to the mortgage if they had exercised 'reasonable diligence and intelligence.'" <u>Lutzky v. Deutsche Bank Nat'l</u> <u>Trust Co.</u>, No. 09-3886, 2009 U.S. Dist. LEXIS 100062, at * 18 (D.N.J. Oct. 27, 2009).

Both Plaintiffs' New Jersey and Federal RICO claims must be dismissed under the relevant statutes of limitation as untimely. All of the above-captioned matters were filed in 2012 – well after the applicable four year statute of limitations expired based on the loan origination date for each Plaintiff:

| PLAINTIFFS | ORIGINATION DATE | SOL TERMINATION |
|---|---|---|
| 12-104 – Carrier | 11/1/06 | 11/1/10 |
| 12-7702 – Nieves | 6/14/06 | 6/14/10 |
| 12-7755 – Dikker | 6/27/06 | 6/27/10 |
| 12-7701 – Carelli | 6/23/06 | 6/23/10 |
| 12-7945 – Debonis | 3/28/07 | 3/28/11 |

| 12-7946 - Garcia | February/March 2007 | Feb/Mar 2011 |
|---|---|---|
| 12-7947 - Kowalczyk | 9/18/06 | 9/18/10 |
| 12-7949 - Mendez | 7/5/06 | 7/5/10 |
| 12-7948 - Lim | 6/16/05 | 6/16/09 |

Plaintiffs argue that their respective RICO claims "did not accrue until the Plaintiffs were put into foreclosure." Pls.' Br. at 22. However, Plaintiffs could have discovered the alleged basis for their injury at or near the origination date of their respective loans through the exercise of reasonable diligence, especially in light of Plaintiffs' assertions that the documents presented at closing were "contradictory."

Defendants have carried their burden under the inquiry notice analysis to show the existence of "storm warnings" – i.e., "information or accumulation of data that would alert a reasonable person to the probability that misleading statements or significant omissions had been made." Cetel, 460 F. 3d at 507 (internal quotations omitted). Accepting Plaintiffs' assertions about the TILA documents as conflicting with the mortgage notes and their contentions that the Defendant offered the mortgage at a very low "teaser" rate that would increase dramatically at the end of an introductory period – Plaintiffs

should have known whether at closing or, at the latest, a few months thereafter, when the "teaser" rate expired.  <u>See</u> Pls.' Br. at 4.

In response, the Plaintiffs have failed to carry their burden to show that they "heed[ed] the storm warnings, [and] exercised reasonable diligence but were unable to find and avoid the storm."  <u>Cetel</u>, 460 F.3d at 507.  As all of these matters were not filed until 2012 – more than four years after the loan origination dates or, being more generous to Plaintiffs, the expiration of the "teaser" rates; Plaintiffs' New Jersey and Federal RICO claims will be dismissed as time-barred.


e) <u>Civil Conspiracy</u>

To state a claim for civil conspiracy, Plaintiffs must allege four essential elements: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages."  <u>Morganroth & Morganroth v. Norris,</u> <u>McLaughlin & Marcus, P.C.</u>, 331 F.3d 406, 414 (3d Cir. 2003).

Plaintiffs' civil conspiracy claim must be dismissed because, similar to the discussion of agency above, Plaintiffs

have only asserted bare allegations and legal conclusions unsubstantiated by facts in support of the alleged "agreement" or "common design" between Defendant and another party – e.g., the brokers. Moreover, it is not even clear from Plaintiffs' Amended Complaint or opposition brief who the Defendant is alleged to have conspired with: "Defendants [sic] actions. . . were done in combination with two or more parties acting in concert," Amend. Compl. at ¶ 123, "Defendants conspired to bring to bear these deceptive loans products." Pls.' Br. at 19. Thus, Plaintiffs' civil conspiracy claims fail.

### f) Declaratory Relief

Plaintiffs ask this Court to mark the mortgages at issue as "void, satisfied, and dismissed, and declare the title to the within real [properties] free and clear of any encumbrances held by Defendants" based on "the unclean hands violation of the New Jersey Consumer Fraud Act." Amend. Compl. at ¶ 128.

Because the claims for declaratory relief are grounded on the NJCFA claims, which have been dismissed for the reasons discussed above, the request for declaratory relief is similarly dismissed.

g) Plaintiff-Specific Arguments

The Defendant makes two additional arguments as to three specific Plaintiffs: DeBonis – Civil No. 12-7945, Garcia – Civil No. 13-7946, and Mendez – Civil No. 12-7949, based on the fact that those particular Plaintiffs are currently subject to foreclosure proceedings in state court. The Plaintiffs' reply brief also asserts a separate argument regarding Plaintiff Jung Lim, Civil No. 12-7948. The Court will address these specific arguments below.

(1) Younger Abstention

Defendant contends that the claims by DeBonis – Civil No. 12-7945, Garcia – Civil No. 13-7946, and Mendez – Civil No. 12-7949 must be dismissed because each of those Plaintiffs is currently a defendant in a pending foreclosure matter in New Jersey Superior Court. As such, Defendant contends that Plaintiffs' claims must be dismissed pursuant to the doctrine developed in Younger v. Harris, 401 U.S. 37 (1971).

In Younger, the Court held that "federal courts should abstain from enjoining state criminal prosecutions, because of principles of comity and federalism, unless certain extraordinary circumstances exits." Marran v. Marran, 376 F.3d 143, 154 (3d Cir. 2004). The Younger abstention doctrine has

28

been extended to "particular state civil proceedings that are akin to criminal prosecutions, or that implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Communs., Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013)(citing New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)(other internal citations omitted)) (hereinafter "NOPSI"). The Court in Sprint sought to "clarify and affirm that Younger extends to the three exceptional circumstances identified in NOPSI, but no further."

In Sprint, the Court also further clarified its ruling in Middlesex County Ethics Comm. v. Garden State Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982)("Middlesex"), and held that, when that decision is divorced from its quasi-criminal context, courts have wrongly used it to extend the Younger doctrine whenever three conditions are met: "(1) there is an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provide[s] an adequate opportunity to raise [federal] challenges." Id. at 593. Such a reading of Middlesex incorrectly extends Younger "to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." Id. Importantly, the Court further stated that the "even in the

presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Id</u>. at 593 (internal quotation marks omitted).

In support of its <u>Younger</u> argument, the Defendant cites cases decided prior to the Supreme Court's recent decision in <u>Sprint</u> that are seemingly undercut by the Supreme Court's clarification of both the <u>Younger</u> doctrine and its decision in <u>Middlesex</u>. For example, Defendants rely on <u>Gray v. Pagano</u>, 287 Fed. Appx. 155 (3d Cir. 2008), and progeny. In <u>Gray</u>, the Third Circuit held that the <u>Younger</u> abstention was applicable where there was an ongoing state foreclosure proceeding because of the three conditions articulated in <u>Middlesex</u>.

To rely on <u>Middlesex</u> in the instant matter would improperly divorce the <u>Middlesex</u> holding from its quasi-criminal context – a strategy rejected by the Supreme Court in <u>Sprint</u>. As such, and mindful of the admonition in <u>Sprint</u> that "federal courts are obliged to decide cases within the scope of federal jurisdiction" and that "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter," <u>Sprint</u> 134 S. Ct. at 588, this Court will decline to apply the <u>Younger</u> abstention to the instant matter.

(2)  <u>Entire Controversy Doctrine</u>

With respect to the three Plaintiffs subject to foreclosure actions in state court, the Defendant also avers that their claims must be dismissed under New Jersey's Entire Controversy Doctrine.  During oral argument on the Defendant's first motion to dismiss [Civil Action No. 1201-04, Docket No. 7], the Court discussed both the implications of both the Entire Controversy and <u>Rooker-Feldman</u> doctrines with respect to these Plaintiffs.

At this juncture, the Court will deny the aspects of Defendant's motion relying on the Entire Controversy doctrine; almost one year has passed since the Defendant filed the instant motions asserting that these Plaintiffs' claims are barred because of the pending foreclosures.  Because of this extended time lapse, this Court is uncertain as to the status of the foreclosure actions in state court – i.e., whether or not they are still pending.  Therefore, it is unclear to this Court which doctrine would be more properly applied at this point – the Entire Controversy Doctrine or <u>Rooker-Feldman</u>.

(3)  <u>Claims by Plaintiff Jung Lim</u>

In their opposition brief, the Plaintiffs note that "Defendants have alleged that Plaintiff, Jung Lim's claims are

barred by the Statute of Limitations." The Court was not able to locate this argument in the Defendant's current motion papers filed in the Lim matter, Civil No. 12-7947; instead, this argument was presented in the Defendant's first motion to dismiss when the Plaintiffs' claims were still consolidated Civil No. 12-104, Docket No. 7]. This Court agrees that any claims asserted by Plaintiff Lim would be time-barred under the six year statute of limitations applicable to fraud and breach of contract claims. See Lunn v. Prudential Ins. Co. of Am., 283 Fed. Appx. 940, 942 (3d Cir. 2008)(statute of limitations for fraud and breach of is six years); NN&R, Inc. v. One Beacon Ins. Group, 362 F. Supp. 2d 514, 521 (D.N.J. 2005) (statute of limitations for NJCFA is six years); Curtis v. Treloar, 1998 U.S. Dist. LEXIS 23822, at * 25 (D.N.J. Aug. 31, 1998)(six year statute of limitations for negligent misrepresentation claim).

For the reasons stated above with respect to the RICO claims, Plaintiffs' claims accrued on or near the loan origination date, which, for Plaintiff Lim was June 16, 2005. Because the six year statute of limitations expired in 2011 and Plaintiff Lim's case was not filed until 2012, this Court finds that all claims by Plaintiff Lim are time-barred as they are all based on or derive from the time-barred fraud, breach of

contract, negligent misrepresentation, and/or RICO claims and
must be dismissed with prejudice.


     h) <u>Leave to Amend</u>

     Plaintiffs have already filed an Amended Complaint in the
<u>Carrier</u> matter, 12-104.  Where a plaintiff has already amended
the complaint or defendants have filed a responsive pleading,
the plaintiff may further amend the complaint only with leave of
the court. Fed. R. Civ. P. 15(a); <u>Shane v. Fauver</u>, 213 F.3d 113,
115 (3d Cir. 2000).  Leave to amend is inappropriate where it
would cause undue delay, the amendment is motivated by bad faith
or a dilatory motive, the amendment would cause prejudice, or
the amendment is futile.  <u>In re Burlington Coat Factory Sec.</u>
<u>Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means
that the complaint, as amended, would fail to state a claim upon
which relief could be granted under the Rule 12(b)(6) standard.
<u>Id</u>. (citing 3 Moore's at ¶ 15.08[4], at 15-81 (3d ed. 2000)).

     Leave to amend is rarely applied sua sponte.  <u>Fletcher-</u>
<u>Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247,
252 (3d Cir. 2007).  In <u>Fletcher-Harlee</u>, the Third Circuit held
that "in ordinary civil litigation it is hardly error for a
district court to enter final judgment after granting a Rule

12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." Id. at 253; see id. at 252-53 (stating that the court "rarely applied the sua sponte amendment rule outside of the context of a civil rights case . . . . In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint.").

While the Plaintiffs have not requested leave to amend, out an abundance of caution, this Court will permit Plaintiffs to file for leave to amend only as to the Counts where an amended version of the complaint would not necessarily be futile in light of this Court's decision – i.e., Plaintiffs cannot seek leave to amend with respect to their RICO causes of action as those actions are clearly time-barred or with respect to Plaintiff Lim.

**IV. Conclusion**

For the reasons set forth above, this Court will grant Defendant's motion to dismiss Plaintiffs' Complaints in all of the above-captioned matters.  The Plaintiffs will have thirty (30) days to move for leave to amend their respective Complaints as to all counts except Counts VII and VII (NJ RICO and Federal

34

RICO).  All claims asserted by Plaintiffs DeBonis – Civil No.
12-7945, Garcia – Civil No. 13-7946, and Mendez – Civil No. 12-
7949 are dismissed without prejudice pending further briefing on
the status of those Plaintiffs' foreclosure proceedings.
Finally, all claims asserted by Plaintiff Lim – Civil No. 12-
7948 are dismissed with prejudice.  An accompanying Order will
issue this date.

                                    s/Renée Marie Bumb_____
                                    RENÉE MARIE BUMB
                                    United States District Judge


Dated:    January 31, 2014